This case involves a divorce from bed and board, i.e., a legal separation.
In January 1994, Kathleen Anne Phillips filed a complaint, seeking a divorce from Floyd D. Phillips, Jr., by alleging an irretrievable breakdown of the marriage. She further alleged, among other things, that the husband had left her in September 1993, after almost 24 years of marriage, to live with his paramour, and that the husband's infidelity and marital misconduct had caused her to suffer emotional trauma, requiring extended hospitalization and confinement. In October 1994, the wife amended her complaint seeking an absolute divorce to seek a divorce from bed and board. She asserted that her treating physician and psychiatrist had recommended that a divorce from bed and board would be in her best interest, mentally and physically, for a period of time. She further alleged that cruelty and misconduct on the part of the husband had caused her to suffer emotional and physical illnesses that justified a divorce from bed and board in lieu of an absolute divorce. At trial, the husband orally counterclaimed for an absolute divorce.
Following ore tenus proceedings, the trial court found that the wife was presently unemployable, that she remains in need of psychological or psychiatric care, and that the husband was responsible for her present condition. *Page 528 
The trial court granted the parties a divorce from bed and board, and, inter alia, awarded the wife the marital home, denied the wife's claim to any of the husband's retirement accounts, and awarded each party the personal property in his or her possession. The husband's post-judgment motion was denied; hence, this appeal.
The husband raises two issues on appeal: (1) whether the trial court erred in granting a divorce from bed and board, and (2) whether the trial court's award of the marital home to the wife was inequitable.
The record reveals that the parties were married for almost 24 years before their separation in 1993, and that two children, now adults, were born of this marriage. The wife was a housewife during the marriage and is currently unemployable. The husband earns approximately $65,000 to $70,000 annually.
The wife testified that in July 1993, the husband told her that he was committing adultery. She further testified that after this revelation, she contemplated suicide and was subsequently hospitalized. According to the wife, the husband continued the affair, and the husband's paramour telephoned the parties' marital home. The wife stated that in September 1993, while she was again hospitalized, the husband moved out of the marital home, but that he subsequently returned. The wife further stated that in November 1993 the husband telephoned her from work and told her that he was going to stay with his paramour. The wife subsequently attempted suicide and was hospitalized for three weeks.
The wife testified that she had tried working as a waitress since the separation and that she had no skills to perform any other job. She further testified that the husband withdrew all funds from their bank accounts, that he had harassed her since the separation, and that, although their health insurance company issued new insurance cards, the husband would not provide a card to her. The wife testified that the husband had two retirement accounts of approximately $40,000 and $25,000.
The husband admitted to his involvement in an extramarital affair, to withdrawing funds from the bank accounts, to leaving the marital home, and to writing a letter to the wife's treating physician, stating that he was not responsible for her medical bills. The husband testified that he knew that the wife had been under psychiatric care since their separation. He also testified that he threatened to prosecute the wife for continuing to cash his paychecks following their separation, although this had been a past practice throughout their marriage. He further testified that he signed an authorization for a federal investigation of the wife by his credit union. That investigation was subsequently withdrawn. The husband testified that he did not believe that the wife was as sick as she claimed to be. He testified that there were marital problems from the beginning, and that he had stayed with the wife only because of the children.
Dr. Aron Halfin, the wife's treating psychiatrist, testified regarding the wife's current condition. He testified that when he first examined the wife in September 1993 she was severely depressed and that she was hospitalized because she was actively suicidal. He further testified that he determined that the basis of her depression was her husband's suddenly deciding to leave the marital home and move in with another woman, with whom he admitted to having an extramarital affair. Dr. Halfin testified that the wife claimed to have had no history of psychiatric problems before the separation, and he diagnosed her as suffering from major, severe depression, also known as "clinical depression." According to Dr. Halfin, he had treated the wife, on an inpatient basis and on an outpatient basis, continuously since September 1993. He stated that the husband's disclosure of his adulterous affair was a traumatic event for the wife and that she was experiencing psychological trauma as a result.
Dr. Halfin stated that the revelation of the adulterous affair had affected the wife so adversely because her life had been centered around the husband and his goals, and he stated that she had no career or interests of her own outside the home. Thus, according *Page 529 
to Dr. Halfin, the husband's abrupt departure devastated the wife and her dependency on him made her vulnerable to the reactions that she experienced. He stated that the wife had been hospitalized twice, with the second admission occurring because of an unsuccessful reconciliation attempt. Dr. Halfin testified that there was absolutely no indication that the wife was malingering and that she was on medication because of emotional and mental instability. Dr. Halfin testified that the husband's behavior complicated the wife's treatment. He stated that the husband often withheld the wife's insurance card or weekly checks, making her unable to purchase her required medication, and leaving her without medication for several weeks at a time, causing a recurrence of her original symptoms. Dr. Halfin testified that the husband had sent several notes to Dr. Halfin's office stating that he was no longer married to the wife and, consequently, that he was no longer responsible for her medical bills. He further testified that the husband's actions hindered the wife's treatment, that they worsened her condition and were "ongoing torture" for her, and that the husband had not acted responsibly throughout the process. He stated that medication was essential to prevent the wife from becoming suicidal and actually committing suicide. He further stated that the unpaid medical bills had been a source of embarrassment for the wife, causing further deterioration of her condition.
Dr. Halfin stated that he recommended legal separation until the wife could accept that the parties could not be married, or until they reconciled. He stated that he thought that an absolute divorce at this time would have a tremendous effect on the wife and her treatment, and he recommended that the trial court refrain from granting an absolute divorce at this time. He stated that the wife was not emotionally stable enough to be gainfully employed and that when she had tried to work after the separation her medical condition worsened. Dr. Halfin testified that the wife's short-term prognosis was "fair to poor," and required continued treatment by a physician.
When a trial court receives ore tenus evidence in a divorce proceeding, its judgment is presumed correct, if supported by the evidence. Waid v. Waid, 540 So.2d 764 (Ala.Civ.App. 1989). Absent an abuse of discretion, this court is not permitted to substitute its judgment for that of the trial court. Beckwithv. Beckwith, 475 So.2d 575 (Ala.Civ.App. 1985).
The husband first argues that the trial court erred in granting a legal separation instead of an absolute divorce. Specifically, he argues that there was ample evidence to support a finding of an irretrievable breakdown of the marriage.
Case law clearly holds that "when a trial court has before it a request for a divorce from bed and board [legal separation] and a divorce from the bonds of matrimony [absolute divorce], the court can exercise its discretion and determine which type of divorce is best for the parties under the facts of their case." Drummond v. Drummond, 466 So.2d 974, 976
(Ala.Civ.App. 1985).
The husband admitted to committing adultery, and the evidence reveals other misconduct and mistreatment of the wife. Ample evidence established that the husband's conduct and behavior since the separation had been detrimental and damaging to the wife's treatment and recovery. There is ample evidence supporting the trial court's finding that the husband caused the wife's current mental and emotional illness and that he hindered her recovery. The treating physician testified why an absolute divorce would not be in the wife's best interest at this juncture. Our review of the record reveals that the evidence supports the trial court's judgment and that the trial court did not abuse its discretion in granting a divorce from bed and board.
The husband next argues that the trial court erred in awarding the marital home and property to the wife. It is well settled that the division of property pursuant to a divorce is a matter that rests soundly within the discretion of the trial court, and that its judgment will not be disturbed on appeal absent an abuse of that discretion. Sketo v. Sketo,608 So.2d 759 (Ala.Civ.App. *Page 530 
1992). A property division need not be equal, but it must be equitable, and the determination of what is equitable rests within the sound discretion of the trial court. Montgomery v.Montgomery, 519 So.2d 525 (Ala.Civ.App. 1987). Further, in dividing property, the trial court may consider the conduct of the parties regarding the cause of the divorce. Tims v. Tims,519 So.2d 558 (Ala.Civ.App. 1987); Sheffield v. Sheffield,485 So.2d 1177 (Ala.Civ.App. 1986).
The trial court allowed each party to keep the personal property already in his or her possession, awarded the wife the marital home, and denied the wife any claim, right, or interest in the husband's retirement accounts. The parties were married for approximately 24 years; the wife was a housewife, and her current medical condition prevented her from obtaining, much less maintaining, gainful employment; and the wife's standard of living had been affected by the separation. The trial court specifically found that the husband "is materially responsible for" the wife's current medical condition, and the evidence indicates that his actions and behavior after the separation had significantly hindered the wife's recovery. Our review of the record reveals that the trial court did not abuse its discretion in dividing the property division, and that the trial court's award is equitable.
The evidence supports the trial court's decision, and the husband has shown no error. Accordingly, the judgment is due to be, and it is hereby, affirmed.
AFFIRMED.
ROBERTSON, P.J., and YATES, MONROE, and CRAWLEY, JJ., concur.